AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2020 JUL -7 PM 4: 20

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )        Case No.
information associated with Facebook user ID rodo.glez. )
3 that is stored at premises controlled by Facebook. )
)

2:20-mj-467

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to knowingly and intentionally distribute and possess with intent to distribute a controlled substance |

The application is based on these facts:

See Attached Affidavit in Support

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gregory S. Libow, Special Agent, HSI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____July 7, 2020____

City and state: ____Columbus, Ohio____

_____
Elizabeth A. Preston Deavers
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID **Rodo.Glez.3** that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including **Rodo.Glez.3:** full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities **January 1, 2020 to July 6, 2020**;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **January 1, 2020 to July 6, 2020**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers;

future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user **January 1, 2020 to July 6, 2020**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account **January 1, 2020 to July 6, 2020**;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.**

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21 U.S.C. § 846 (attempting or conspiring to knowingly or intentionally manufacture, distribution, dispensation, or possession with intent to manufacture, distribute, or dispense a controlled substance as outlined in Title 21 U.S.C. § 841) involving the Facebook user since January 1, 2020, including, for the user ID identified on Attachment A, information pertaining to the following matters:

(a)     Records of communications among and between GONZALEZ, LOPEZ and other co-conspirators involved in drug trafficking.

(b)     Records pertaining to the use of and/or distribution of illegal drugs.

(c)     Records of photos and/or conversation about tracking numbers or package shipments.

(d)     Records pertaining to drug proceeds.

(e)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(f)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(g)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID **RODO.GLEZ.3** THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No.: _____<br><br>Chief Magistrate Judge Elizabeth A. Preston Deavers<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Gregory S. Libow, a Special Agent with the United States Immigration and Customs Enforcement (ICE) office of Homeland Security Investigations (HSI), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent (SA) with HSI (Homeland Security Investigations), an investigative arm of the Department of Homeland Security (DHS), since May of 2019. I am currently assigned to the Central Ohio High Intensity Drug Trafficking Area (HIDTA) Dark Web

Taskforce in Columbus, Ohio, where I am responsible for conducting international narcotics smuggling and distribution investigations, to include narcotics trafficked by utilizing various dark web marketplaces. Prior to becoming a Special Agent, I was employed as a United States Customs and Border Protection (CBP) Officer for 8 years. During the later portion of my time at CBP, I was assigned to Columbus, Ohio and worked alongside HSI and other law enforcement agencies targeting drug and weapon shipments purchased off the internet. As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. Since the time of my assignment with HSI, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in narcotics investigations. Through training and experience, I am familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. In particular, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hardline telephones, and cellular telephones, or use of multiple telephones or other devices, to avoid detection by law enforcement.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. § 846 (attempting or conspiring to knowingly or intentionally distribute and possess with intent to distribute a controlled substance) have been committed by Rodolfo GONZALEZ Montano, Brian Diaz LOPEZ and other unknown

co-conspirators. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

**PROBABLE CAUSE**

5.    On March 24, 2020, the CBP at the Federal Express (hereinafter "FedEx") Hub in Memphis, Tennessee, pursuant to their authority, seized approximately 2.46 kilograms of heroin concealed inside a shipment of tiles.  The label on the package indicated Airway Bill # 3913 4542 5939 was sent from Oswaldo Emmanuel Rodriguez CHAVEZ in Tepic, Mexico and addressed to Brian Diaz LOPEZ at 4885 Huron Avenue in Columbus, Ohio.  The phone number listed on the package for LOPEZ was (323) 535-7999.  Information related to the seizure was sent by CBP to HSI in Columbus, Ohio.   It was determined that address 4885 Huron Avenue did not exist, but rather what appeared to be a "5" at the end of the street address was actually an "S" which would correspond to 488 S. Huron Avenue as the intended address of the parcel.

6.    Law enforcement database queries confirmed that the phone number listed on the package belonged to Brian Diaz LOPEZ who had a valid California Identification Card issued to him with an address listed as 8635 Baring Crossing Street, Los Angeles, California 90044.  Queries also revealed LOPEZ had an outstanding bench warrant issued on January 24, 2020, from Franklin County, Ohio, for failure to appear.

7.    On March 31, 2020, at approximately 9:00 a.m., investigators with the Central Ohio HIDTA Dark Web Taskforce conducted surveillance on 488 South Huron Avenue in Columbus, Ohio, as it relates to the FedEx package.   Investigators observed a black Honda Civic parked on a parking pad in the alley to the east of the residence.  The registered owner of the vehicle was Cielo CABALLERO with an address of 3686 Plainview Drive in Columbus, Ohio.  Within the hour, investigators observed a Hispanic female, later identified as Cielo CABALLERO, and a

3

Hispanic male, later identified as Brian Diaz LOPEZ, leave the residence and get into the black Honda Civic. LOPEZ got into the driver seat and CABALLERO got into the front passenger seat. Investigators followed the Civic to 3043 West Broad Street, Columbus, where CABALLERO got out of the car and entered a business, Angel Tax Service Associates. LOPEZ, as the sole occupant, then drove the Civic back to 488 South Huron. LOPEZ exited the Civic and entered the residence. While surveilling the residence, investigators observed LOPEZ, on multiple occasions, open the front door, check the front porch, and then close the door again.

8.     Continuing on the same day, at approximately 4:36 pm, a SA with HSI made a ruse phone all to the number of the intended recipient listed on the FedEx package, (323) 535-7999. The SA, posing as a FedEx worker, stated that he was calling about a FedEx parcel that had been unable to be delivered that day to 4885 Huron Avenue as the address did not exist. The female who answered the phone, later confirmed to be CABALLERO, told the SA that they were aware someone had listed the wrong address and that the correct address was 488 South Huron Avenue, Columbus, Ohio, 43204. CABALLERO confirmed the correct tracking number by reading it to the SA, and upon such confirmation, the SA told her that the package addressee would need to schedule an appointment to come to the FedEx facility at 2850 International Drive in Columbus to pick up the package. CABALLERO asked if they could pick up the package that day and the SA told her that they were closing for the day. CABALLERO scheduled a 10:00 a.m. appointment for the following day, April 1, 2020, for LOPEZ to pick up the package.

9.     On the morning of April 1, 2020, while conducting surveillance at 488 South Huron Avenue, investigators observed LOPEZ and CABALLERO get into the black Honda Civic. LOPEZ then drove CABALLERO to Angel Tax Service Associates, and she was observed entering the business. Investigators then observed LOPEZ drive towards the FedEx facility. Once

LOPEZ was on International Drive within a short distance of the FedEx facility, a deputy with the Franklin County Sheriff's Office pulled the Civic over due to the active warrant for LOPEZ. LOPEZ was arrested on the warrant and placed in the back of the deputy's cruiser. Shortly after, SA Libow and HSI SA Van Sickle arrived at the stop and conducted an interview of LOPEZ. LOPEZ was advised of his Miranda rights, signed that he understood, and waived those rights to talk to investigators. During the interview, LOPEZ stated, in summary, that an old friend contacted him through Facebook Messenger and asked if he could use LOPEZ's address to get a package delivered. LOPEZ stated that he did not know what was going to be in the package, but that he (LOPEZ) was supposed to just leave it on his porch. LOPEZ advised that once the package arrived he (LOPEZ) was then to call his friend, and the friend would send someone to pick it up and pay LOPEZ $1000. LOPEZ stated that once he found out that he needed to go to FedEx to pick up the package, his friend offered him an additional $1000 to go to FedEx and pick it up. During the interview, LOPEZ agreed to and signed a consent to search form for his Samsung cellphone.

### Search of LOPEZ's phone

10.     In early April 2020, a search was executed on LOPEZ'S phone, (323) 535-7999. Law enforcement recovered the following:

a.     A Facebook Messenger[1] conversation between LOPEZ and Rodolfo "Rodo" GONZALEZ Montano on February 14, 2020.[2] The user ID associated with the individual communicating with LOPEZ is "**RODO.GLEZ.3**". This information was determined through a Facebook query of Rodo Gonzalez (the name that

---

[1] Facebook Messenger is described in further detail in the next section of this Affidavit.
[2] It should be noted that the statements attributed below, as well as in proceeding sections of the Affidavit, are summary statements and do not appear verbatim. Some of the words could be edited based upon further review of the Cellebrite report or transcribed reports of the conversations originally written in Spanish. Almost all of the conversations between LOPEZ and GONZALEZ were in Spanish and were translated for purposes of this Affidavit.

appeared as the other party in the Messenger conversation.)   When queried, the biographical information associated with GONZALEZ, confirmed that he resided in Columbus, Ohio.  Further, the profile photo of GONZALEZ matched the photo in the Facebook Messenger communication.  Once the profile was confirmed, law enforcement then accessed the web address bar for GONZALEZ which showed his user ID to be **RODO.GLEZ.3**. In the conversation GONZALEZ asked LOPEZ if he wanted a job picking up something and dropping it off.  LOPEZ replied that it depends on what it is, and GONZALEZ said food. LOPEZ responds stating if it is here in Ohio then yes.  GONZALEZ replies back saying yeah, it's in Ohio, you just go pick up and deliver.   GONZALEZ then asks LOPEZ for his Snapchat information.   LOPEZ sends his Snapchat link with the Snapchat Username "Brian_L5238" and GONZALEZ responds back saying he will explain through Snapchat.[3]

b.   A WhatsApp[4] conversation between LOPEZ and phone number (971) 222-8413 that took place from March 7, 2020, through April 1, 2020. The initial conversation begins with the (971) 222-8413 stating that it was Rodo with a new number. Additionally, an administrative subpoena was served on T-Mobile which confirmed this phone number was subscribed to by GONZALEZ.  On March 12, 2020, at

---

[3]According to the Snap Incl. Law Enforcement Guide, "Snapchat is a mobile application made by Snap Inc. and available through the iPhone App Store. The Snapchat app provides users a way to share moments with photos, videos and chats.
[4]WhatsApp Inc. provides an Internet based multimedia messaging service (MMS) via a smartphone application that functions using both cellular and wireless data connections.  WhatsApp Messenger is an alternative to traditional cellular short message service (SMS) and MMS.  WhatsApp users may send text messages, audio messages, video messages, and location information between mobile devices with the WhatsApp Messenger application installed.

approximately 4:39 p.m, GONZALEZ asked LOPEZ if he wanted another job like last time, and to pick up a package and deliver it. LOPEZ states he's with his girlfriend and he'll call GONZALEZ in a bit. LOPEZ then replied back asking when and GONZALEZ sends an audio message stating he will let LOPEZ know before the package arrives, so LOPEZ does not go out. GONZALEZ then asked for LOPEZ's address and LOPEZ replies he rented a house, needed cash, and to send more money his way. LOPEZ then sends a screenshot of the address 488 South Huron Avenue. Columbus, Ohio 43204. LOPEZ asked GONZALEZ to let him know so he does not go to work. GONZALEZ states he will let LOPEZ know the day before. LOPEZ said okay and asks for GONZALEZ to keep it low key and GONZALEZ replies back "yes", we do everything low key. LOPEZ then asks GONZALEZ if he could put it under another name, same address and that he'll be home anyway.

c. Continuing with this WhatsApp conversation, on March 26, 2020, LOPEZ asks GONZALEZ to send him the tracking number because the parcel had not arrived yet. GONZALEZ replies back with 3913 4542 5939. This is the same FedEx tracking number found on the packaging containing the heroin that was seized by CBP on March 24, 2020. LOPEZ says he will check the tracking number and replies back that the package is still in Guadalajara, Mexico. GONZALEZ replies back in an audio message saying that's what he is seeing as well. LOPEZ sends a screen capture of the tracking number showing that is pending.

7

d.     Continuing with this WhatsApp conversation, on April 1, 2020, LOPEZ sends GONZALEZ a message saying GONZALEZ screwed up and put the wrong address. LOPEZ then sends two screen captures, one of the correct address and a second of a text message sent by an HSI SA posing as a FedEx employee stating the address was invalid for delivery. GONZALEZ replies back that "the idiot who mailed it put the wrong address". GONZALEZ replies again telling LOPEZ to go pick it up tomorrow and that it isn't going to be any trouble. LOPEZ then asks how much he is going to get so he knows.

e.     Another WhatsApp conversation between LOPEZ and phone number (530) 567-9336. The phone number (530) 567-9336 used the same profile picture as GONZALEZ used on his Facebook Messenger account of a young boy and girl standing in front of, what appears to be, a brick apartment complex; as such, the conversation is believed to be with GONZALEZ. The conversation takes place between February 21, 2020, and March 1, 2020, and starts with GONZALEZ listing several individual's names with locations in Mexico and dollar amounts next to each. Several of the names were from Tepic, Nayarit, Mexico, the same area where the seized package of 2.46 kilograms of heroin originated. LOPEZ replies back with receipts from different wire transfer locations showing the money had been transferred to the names GONZALEZ listed. The wire transfers were made under several different individual's names including LOPEZ and CABALLERO. Based upon my training and experience, Drug Trafficking Organizations (DTOs) will use several different individuals to wire transfer money to avoid daily transfer limits.

8

f.     Continuing with this WhatsApp conversation, on February 29, 2020, GONZALEZ asked LOPEZ if he could pick up another paper. LOPEZ asked GONZALEZ how much and GONZALEZ replied back the same 4.  LOPEZ agrees to do it and GONZALEZ sends him an address of 820 N. Wilson Rd, Columbus, OH 43204, a car wash, to meet up with a black car.  GONZALEZ instructs LOPEZ to count it and states, "I'll send you the names soon" and "do the same as last time."  On March 1, 2020, LOPEZ sent GONZALEZ four more wire transfer receipts and stated, "it's done."

11.     A recent federal search warrant served on LOPEZ's Snapchat account, "Brian_L5238", revealed an audio message dated February 21, 2020, from GONZALEZ's Snapchat account.  In that audio message, GONZALEZ instructs LOPEZ to make four wire transfers of $920 plus $10 in transfer fees and states that LOPEZ could keep the remaining money as payment for the transfers.  GONZALEZ finishes the audio message stating he'll give LOPEZ the names shortly.

12.     An HSI administrative subpoena served to T-Mobile revealed GONZALEZ's phone number (971) 222-8413 is activated to an iPhone 11 with IMEI# 353898109679993.  Call records received from the same subpoena revealed GONZALEZ has made and received several phone calls to and from phone numbers linked to active heroin investigations in Oregon, Massachusetts and Ohio.

13.     On April 14, 2020 at approximately 4:00 p.m., GONZALEZ was arrested by Vancouver Police Department (VPD) for Intent to Deliver - Heroin (Revised Code of Washington [RCW] 69.50.401-DEL 1), Possession of a Controlled Substance - Heroin (RCW 69.50.401-PCS

9

1) and Maintaining a Drug Dwelling (RCW 69.50.402). Approximately 1 pound of heroin and $9,165.00 of drug proceeds were seized from the apartment where GONZALEZ resided. GONZALES was released from jail and his next court appearance is scheduled for fall 2020.

14.     On April 18, 2020, a preservation letter was sent to Facebook Inc. requesting the preservation of all information pertaining to the Facebook user ID **RODO.GLEZ.3** from January 1, 2020 to April 19, 2020. On June 5, 2020, a second preservation letter was sent to Facebook Inc. requesting the preservation of all information pertaining to the Facebook user ID **RODO.GLEZ.3** from January 1, 2020 to June 6, 2020.

15.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account

10

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the

11

photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21.    Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the

account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

27. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

28. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

29. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

13

30.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or

14

consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

32.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

33.     Based on the foregoing, I request that the Court issue the proposed search warrant.

34.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

35.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A). Specifically, the Court is a district court of the United States and has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

### REQUEST FOR SEALING

36.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,



Gregory S. Libow, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on the ___7th___ day of July, 2020.

_____GE
Elizabeth A. Preston Deavers
United States Magistrate Judge

16